RECEIVED
Civil Clerk's Office
JUL 1 8 2014
Superior Court of the
District of Columbia
Washington, D.C.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| JENNIFER HEADLEY<br>39 V Street, N.E.<br>Washington, D.C. 20002<br><br>Plaintiff,<br><br>v.<br><br>INSUN S. HOFGARD<br>9385 Juhasz Drive<br>Great Falls, VA 22066-2026<br><br>and<br><br>JEFFERSON S. HOFGARD<br>9385 Juhasz Drive<br>Great Falls, VA 22066-2026<br><br>Defendants. | 14-0004515<br><br>Case No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Jennifer Headley, by her undersigned counsel, sues the Defendants, Insun Hofgard and Jefferson S. Hofgard, and in support states as follows:

## PARTIES

1. Plaintiff Jennifer Headley is a resident of the District of Columbia.

2. Defendants, Insun Hofgard and Jefferson S. Hofgard, are residents of the Commonwealth of Virginia who regularly purchase and sell real estate and conduct business in the District of Columbia.

## JURISDICTION

3. This Court has subject matter jurisdiction pursuant to the District of Columbia Code, Section 11-921(a)(6), and personal jurisdiction over the defendants pursuant to District of Columbia Code, Sections 13-423(a)(1), (a)(3) and (a)(5).

1

## FACTS

4. The defendants are in the business of purchasing dilapidated residential properties in the District of Columbia, hiring unlicensed contractors to improve the properties at nominal cost and reselling the properties for substantial profits. The defendants did not acquire a business license for performing such work until June 2013, which was well after the events described in this complaint.

5. On or about July 5, 2012, the defendants purchased a townhouse property located at 39 V Street, N.E., Washington, D.C. 20002 ("the Property") for the sum of $280,000.

6. The defendants hired Edwin Aguirre Argueta and Abilio Argueta, who operate "Argueta Construction," to fix up the Property for re-sale. Upon information and belief, neither of these individuals was licensed to perform home improvement work or any other construction services in the District of Columbia.

7. The defendants, through their unlicensed contractors, engaged in sub-standard renovation work at the Property that violated the D.C. Building Code and industry standards.

8. The defendants then advertised the Property for sale as a "totally renovated" home. Their marketing flier boasted about its excellent condition: "Welcome to 39 V Street, NE, a totally renovated, circa 1910 townhouse in hot Eckington! . . . The house has been renovated from top to bottom." Similarly, the MRIS listing described the Property as a "total renovation."

9. The defendants also made certain representations in the Seller's Property Condition Statement, including that that the roof was 0-5 years old and that they had no knowledge of leaks or evidence of moisture from the roof; no knowledge of leaks or evidence of moisture in the basement; no knowledge of structural defects in the walls or floors; no

knowledge of defects in the heating system; and no knowledge of defects with the plumbing system.

10.  In reliance on all the representations made by the defendants, the plaintiff signed a contract to purchase the Property on or about March 13, 2013, for the sum of $599,900. The defendants ratified the contract on March 17, 2013.

11.  The settlement was scheduled for April 16, 2013, and Headley took occupancy thereafter.

12.  Soon after her occupancy, Headley began discovering serious latent defects at the Property and realized the Property had *not* undergone a total renovation. Headley commissioned an engineering report and requested D.C. inspectors to visit the Property to evaluate safety issues, at which time more than 27 code violations were noted.

13.  Headley also had several system assessments done by various licensed contractors to determine the full extent of problems at the Property. She was compelled to take out a second mortgage to complete the necessary repairs before any further damage was done.

14.  The following is a summary of the latent defects and necessary repairs by area or item at the Property.

<u>Structural Defects</u>

15.  The defendants removed and replaced the first and second floors without any permits or plans allowing such work, and in contravention of the process approved by the DC permitting office. The load-bearing beams and the post in the center of the living room—necessary to protect the integrity of the Property and required by the D.C. Building Code—were removed but never replaced. The result was a dangerous, unstable second floor without any load-bearing beams.

16. Further, the interior stairway railings were non-compliant with D.C. Building Code, and the rear exterior stairway was too steep and also not to Code.

17. Headley hired a structural engineer to examine the defects and propose a plan of action. Headley made the structural repairs at substantial cost.

### Roof Defects

18. Headley noticed water leaking into the top floor of the Property in November, 2013. A licensed contractor discovered that the leak was attributable to an improperly-patched roof.

19. Although the defendants had represented that the roof was new or nearly new—as indicated on the Seller's Property Condition Statement that the roof was 0-5 years old—the roof was, in fact, at least 8-10 years old according to the contractor and included some of the original metal.

20. Headley learned that sections of the roof were replaced during the defendants' renovation to give the appearance of a new roof. Even where sections of the roof were replaced, however, the contractors used incorrect materials (e.g., drywall nails instead of roofing nails) and the roof was never properly sealed or insulated around the added skylights or original chimneys.

21. As a result of defective workmanship, the areas of the roof around the skylights and the connection with the neighboring roof were cracked and gaping. This occurred because the roofing materials, incorrect for this type of patching, were not heated to an appropriate temperature when installed. It caused leaking into the Property and presented a health and safety hazard. The flashing was also loose because it, too, was installed incorrectly and not at all around the chimneys.

22. The porch roof also evidenced attempts to mask defects; it was rotting, but was newly painted during the renovation to hide the rot.

23. The downspouts and gutters were rusted and painted to mask defects, and the downspouts exploded during the winter months.

24. Headley incurred substantial costs to replace the main roof, porch roof, downspouts, and gutters.

**Plumbing & Gas Defects**

25. Headley discovered several severe plumbing and gas problems at the Property. First, she noticed a leak at the foundation of the Property from the main water intake inside her wall. The basement was sinking and wet, and the leak was spreading under the entire basement floor and compromising the foundation. The basement will need to be re-trenched and waterproofed at substantial cost.

26. Headley also discovered water damage around the front basement wall, a representative from Master Plumbing inspected the area and discovered that the main water line was *above ground* and had not been sleeved or insulated, which violated the D.C. Building Code and presented a serious hazard.

27. The water line had to be quickly buried because leaving it above-ground in freezing temperatures may have caused it to explode, which could have impacted the structure and integrity of the Property and caused severe flooding, putting both Ms. Headley and her neighbors at risk. Headley hired a licensed plumber to make this repair.

28. Furthermore, the basement drainage sump had no sump pump installed at all, and the insulation behind the pump in the wall was installed backwards, rendering the vapor barrier useless. The missing sump pump was accompanied by inadequate drainage—the drains had

shower drain covers instead of appropriate exterior covers. The combination of a missing sump pump and inadequate drainage left the Property prone to flooding and resulted in water damage before it could be resolved. Headley paid additional money to correct these issues

29. Additional plumbing issues include pipes within the home that were unsleeved with backwards insulation, and a water valve soldered shut, requiring replacement, among others. In addition, most of the sinks and toilets used incorrect shut off valves for the selected pipes and leaked.

30. Headley discovered that the gas lines did not meet Code and were not upgraded as per the manufacturing instructions for the furnace, hot water heater, and fireplace. The water heater vent pipe was next to the air intake for the furnace—a dangerous fire code violation that channeled carbon monoxide directly into the furnace. Further, the gas line from the meter to inside the house was undersized. Headley incurred substantial costs to make these repairs, and additional costs for unsuccessful repairs to the furnace and fireplace as the system that supported these items was actually at fault.

### Heating, Ventilation and Air Conditioning (HVAC) Defects

31. Ms. Headley discovered that several plumbing vent stacks were vented into the attic, releasing methane/sewer gas directly into the attic instead of outside. The vent stacks from the existing bathrooms were not capped within the walls on the basement level. This is not only a fire hazard, but could have caused illness to Ms. Headley if it had been undetected.

32. Likewise, the air vents for the furnace were not installed to vent outside the house.

33. Headley incurred costs to remedy these defects and to have the furnace re-built in the utility room as it was installed backwards. The masonry to the exterior of the house was drilled through to properly vent the furnace.

### Additional Expenses and Damages

34.  Headley spent approximately $3,000 in additional money on supplies from hardware stores in an attempt to triage and resolve some of the defects on her own.

35.  She lost a renter and expected rental income totaling $14,400 due to the unfit/unsafe nature of the Property.

36.  Headley missed a total of 21 days from work in order to meet with contractors, inspectors and others to address the various issues with the property, at a loss to her of $7,560.

37.  Headley continues to accrue time missed from work and incur attorney's fees, along with fees and interest on the second mortgage loan to pay for the work needed to repair and stabilize the Property. She will need to take additional days for more contractor repairs and a final inspection by the D.C. Office of Consumer and Regulatory Affairs (DCRA), as DCRA has overturned the inspection done by the defendants' contractors.

38.  Lastly, Headley cancelled holiday travel plans because of the unstable nature of her home, and spent additional hours researching D.C. building codes and looking for permits and plans.

### COUNT I - Violation of Consumer Protection Procedures Act

39.  The plaintiff incorporates herein by reference the allegations in paragraphs 1 through 38 above.

40.  The defendants violated the Consumer Protection Procedures Act by engaging in unlawful and deceptive trade practices. This included making misrepresentations as to material facts that have a tendency to deceive; failing to state material facts when such failure tends to mislead; representing that the Property had characteristics that it did not have; and representing that the Property was of a particular quality that it was not.

41. Headley suffered substantial damages as a result of the defendants' unlawful and deceptive trade practices.

WHEREFORE, the plaintiff, Jennifer Headley, requests judgment against the defendants, Insun Hofgard and Jefferson S. Hofgard, for treble damages in the sum of $300,000.00 or $1,500.00 per violation, whichever is greater, punitive damages in the sum of $100,000.00, interest, costs and reasonable attorney's fees, together with such other and further relief as law or equity may require.

## COUNT II - Intentional Misrepresentation

42. The plaintiff incorporates herein by reference the allegations in paragraphs 1 through 38 above.

43. The defendants, and their authorized agents, asserted false representations of material fact to the Plaintiffs and omitted material facts.

44. The defendants knew the representations were false when they made them, or the representations were made with such reckless disregard for the truth that knowledge of falsity of the statement can be imputed to the defendants.

45. The defendants made the false representations and material omissions of fact for the purpose of defrauding the plaintiff.

46. Plaintiff relied with justification upon the misrepresentations and omissions.

47. Plaintiff suffered damages as a direct result of her reliance on the misrepresentations and omissions.

WHEREFORE, the plaintiff, Jennifer Headley, demands judgment against the defendants, Insun Hofgard and Jefferson S. Hofgard, for compensatory damages in the sum of

$100,000.00, punitive damages in the sum of $100,000.00, plus interest, costs and attorney's fees, together with such other and further relief as law or equity may require.

### COUNT III- Breach of Contract

48.     The plaintiff incorporates herein by reference the allegations in paragraphs 1 through 38 above.

49.     On or about March 17, 2013, the parties entered into a Regional Sales Contract for the sale of the Property.

50.     The Contract included a "Seller's Property Condition Statement," in which the sellers stated that the roof was 0-5 years old and that they had no knowledge of leaks or evidence of moisture from the roof; no knowledge of leaks or evidence of moisture in the basement; no knowledge of structural defects in the walls or floors; no knowledge of defects in the heating system; and no knowledge of defects with the plumbing system.

51.     The defendants materially breached the Contract by making statements in the Seller's Property Condition Statement that were false.

52.     The plaintiff has sustained damages as a result of the defendants' breach of the Contract.

WHEREFORE, the plaintiff, Jennifer Headley, requests judgment against the defendants, Insun Hofgard and Jefferson S. Hofgard, in the sum of $100,000.00, plus interest and costs, together with such other and further relief as law or equity may require.

### COUNT IV- Unjust Enrichment

53. The plaintiff incorporates herein by reference the allegations in paragraphs 1 through 38 above.

54. Plaintiff conferred a benefit upon the defendants by paying them $599,900 for the Property based on the defendants' representations that the Property was "totally renovated" from top to bottom and free of defects.

55. In fact, the Property was no totally renovated from top to bottom and was laden with defects to the structure, roof, plumbing, gas, HVAC system and other areas.

56. It is unjust and unconscionable for the defendants to retain the money paid by the plaintiff above the defendants' original purchase price of $280,000.

WHEREFORE, the plaintiff, Jennifer Headley, requests judgment against the defendants, Insun Hofgard and Jefferson S. Hofgard, in the sum of $319,900.00, plus interest and costs, together with such other and further relief as law or equity may require.

Respectfully submitted,

Michael G. Campbell
D.C. Bar No. 977584
MILLER, MILLER & CANBY
200-B Monroe Street
Rockville, Maryland 20850
(301) 762-5212
(301) 762-6044 facsimile
mgcampbell@mmcanby.com

*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

The plaintiff demands trial by jury on her complaint.

_____
Michael G. Campbell