IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER HEADLEY | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| INSUN S. HOFGARD, et al. | )     Case No. 1:14-cv-01436-EGS |
| | ) |
| Defendants. | ) |
| INSUN and JEFFERSON HOFGARD | ) |
| | ) |
| Third-Party Plaintiffs | ) |
| v. | ) |
| | ) |
| EDWIN AGUIRRE ARGUETA, et al. | ) |
| 44160 Tippecanoe Terrace | ) |
| Ashburn, Virginia 20147 | ) |
| | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM OF LAW SUPPORTING THIRD-PARTY DEFENDANT'S MOTION TO ENFORCE SETTLEMENT

In support of his motion to enforce the settlements reached in this matter, the Third-Party Defendant EDWIN AGUIRRE ARGUETA states:

### INTRODUCTION

Although the parties reached valid and enforceable agreements to settle this action, the Defendants have balked at completing the settlement since engaging Reed Smith as additional legal counsel.  In particular, the Defendants now wish to back away from an offer they made, which was accepted by the Third-Party Defendant and the insurers forming a Side Agreement, and which allowed the parties to accept the Plaintiff's settlement demand. Because the Side Agreement is a valid and enforceable contract, it should be enforced by the Court, which in turn will settle all claims and allow this action to be dismissed.

**BACKGROUND**

This case arises out of a sale of renovated residential property in the District of Columbia, in which the Plaintiff ("Headley") claimed misrepresentations were made about the quality of the property she purchased, and the defendants (the "Hofgards") claimed any defects in the renovations were caused by the contractor she engaged ("Argueta").  The Hofgards tendered the claims to their insurer, Certain Underwriters at Lloyd's London ("Underwriters"), and filed a third-party action against Argueta seeking contribution and/or indemnification.  Argueta tendered the claims against him to his insurer, Southern Insurance Company of Virginia ("Southern").

Southern reserved its rights with respect to the claims and notified Argueta that the claims asserted against him did not appear to be covered by the policy.  Nevertheless, subject to its reservation of rights, Southern engaged undersigned counsel to defend Argueta in this action.[1]  The Defendants and the third-party defendant have asserted defenses to the claims raised against each of them.

In their Rule 16.3 Joint Status Report, the parties quickly informed the court that they were interested in seeking resolution short of litigation.  They further asked the court to defer the beginning of discovery in the case and to refer the case to mediation, which the Court did by Order dated January 30, 2015.  The parties met in mediation on April 15, 2015, but failed to resolve the case at mediation.  On April 30, 2015, however, the parties advised the Honorable Alan Kay, Magistrate Judge that they had reached a settlement.

Separate and apart from the mediation conducted by Judge Kay, the Hofgards, Argueta, Southern and Underwriters engaged in and negotiated their own separate settlement, the purpose of which was to resolve the coverage issues between the insurers

---

[1]  It is assumed a similar position and reservation has been asserted by Underwriters with respect to the claims against the Hofgards.

and insureds in this case and to resolve a separate dispute between themselves on how to
fund a settlement with Headley.  Although these issues and disputes existed between these
defense parties at the time of the mediation, they were not discussed with or otherwise
mediated by Judge Kay.

Shortly after the April 15th mediation, an opportunity to settle the Headley case
arose with Headley communicating an amount of money she would accept to settle all of
her claims.  As evidenced by a personal e-mail sent April 20, 2015 to the other defense
attorneys, Insun Hofgard was personally engaged with her attorney and with Argueta,
Southern and Underwriters in trying to meet Headley's settlement demand.[2]  In an effort to
resolve the disputes between the defense parties that were blocking any acceptance of
Headley's demand, the Hofgards made an offer to the other defense parties toward
compromising their disputes.  This offer was presented in an e-mail from the Hofgard's
attorney dated April 23, 2015.  After consideration, the insurers and Argueta accepted that
offer, as evidenced by numerous e-mailed correspondences and participation by all the
defense parties in drafting a Settlement Agreement between themselves (the "Side
Agreement").  It was only after this separate Side Agreement had been reached that the
Hofgards, through their attorney, advised Judge Kay that the Headley settlement demand
was accepted and the case settled.

During the working through of the wording of the two separate settlement
agreements, the Hofgards engaged the law firm of Reed Smith as additional legal counsel.[3]

---

[2] All evidence related to the communications and negotiations between the parties has been
withheld from any filing in the Court record to preserve its confidential nature, but if deemed
appropriate by the Court, will be presented to the Court *in camera* for consideration and to
make the necessary factual findings with respect to this motion.

[3]  Howard Stevens is still counsel of record for the Hofgards in this action.  Reed Smith has
not made an appearance in this action.

An attorney from Reed Smith then advised counsel for Argueta and the insurers that the Hofgards would not honor the Side Agreement.  Since this change of heart, the Hofgards have refused to honor the settlements.  Because Argueta and the insurers accepted an offer expressly made by the Hofgards to settle their disputes as to coverage and funding of the Headley settlement, the parties have a valid and binding contract which is enforceable under the law of the District of Columbia and this court's precedence, and it should be enforced allowing the Headley settlement to be completed and this action dismissed.

**DISCUSSION**

"It is well established that federal district courts have the authority to enforce settlement agreements entered into by litigants in cases pending before them." Samra v. Shaheen Bus. & Inv. Group, Inc., 355 F. Supp. 2d 483, 493 (2005) (inner citations omitted); (See also Blackstone v. Brink, 2014 U.S. Dist. LEXIS 110412.)  "[W]hether parties have reached a valid settlement is a question of contract law." Samra, at 494.  A party seeking to enforce a settlement agreement seeks the equitable remedy of specific performance of a contract.  Id. at 493.

Whether a settlement agreement was formed requires application of contract principles.  Id. at 494.  Since state contract law governs enforcement of settlement agreements, (Hood v. D.C., 211 F. Supp. 2d 176, 179 (2002)), an initial question is which jurisdiction's contract law should apply, potentially implicating a conflicts of law inquiry. Samra, at 496-96.  In a diversity case, the court applies the [conflicts] law of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); Lee v. Flintkote Co., 193 U.S. App. D.C. 121, 593 F.2d 1275, 1278-79 (D. C. Cir. 1979).  Under District of Columbia law, the first question is whether any conflict exists among the potentially applicable legal standards.  Samra, at 496.  Only if there is a conflict does District of Columbia law require choice of law analysis to determine which standard governs the

issues in the case.  Id.  If there is a conflict, D.C. applies the law of the jurisdiction having the "more substantial interest in the resolution of the issues."  Id.

Impacting this case are two separate settlement agreements, one settling the Plaintiff's claims for defects at her property located at 39 V Street, N.E., Washington, D.C., and a second agreement between the defendants, the third-party defendants, and each of their respective insurers resolving separate claims and issues between them including how to fund the Headley settlement represented to Judge Kay.  The parties involved include the Plaintiff, a resident of D.C., the defendants, residents of Virginia, the third-party defendant, a resident of Virginia, Underwriters, an insurance company headquartered in London, the United Kingdom, and Southern, an insurance company headquartered in Richmond, Virginia.  The two settlement agreements each involve claims and rights associated with property located in the District of Columbia.  The Headley settlement was formed in the District of Columbia.  The Side Agreement was negotiated by telephone and e-mail between the defense parties, with obligations that impact claims and property existing in the District of Columbia.  Therefore, the two jurisdictions to consider are the District of Columbia and Virginia and whether any conflict exists between these two jurisdictions as to the standards to apply.  Samra, at 496.

I.      THERE IS NO CONFLICT BETWEEN DISTRICT OF COLUMBIA AND VIRGINIA LAW ON THE ENFORCEMENT OF SETTLEMENT AGREEMENTS.

A.  District of Columbia law

"It is well established that settlement agreements are entitled to enforcement under general principles of contract law."  Goozh v. Capitol Souvenir Co., 462 A.2d 1140, 1142 (D.C. 1983) (quoting Brown v. Brown, 343 A.2d 59, 61 (D.C. 1975)).   Enforceable oral contracts require both an agreement as to all the material terms and an objective manifestation of the parties' intent to be bound by the oral agreement.  New Econ. Capital,

LLC v. New Markets Capital Grp., 881 A.2d 1087, 1094 (D.C. 2005) (citing Jack Baker, Inc. v. Office Space Dev. Corp., 664 A.2d 1236, 1238 (D.C. 1995)).  The two requirements are closely intertwined because even if the parties intend to be bound by an agreement, the court must be able to determine the terms of the agreement before it can enforce them. Strauss v. New Market Global Consulting Group, LLC, 5 A.3d 1027, 1032-33 (D.C. 2010); Rosenthal v. Nat'l Produce Co., 573 A.2d 365, 370 (D.C. 1990) ("with respect to an oral contract, the material terms of the agreement must be 'sufficiently definite' such that the parties are clear about the performance that is due and the obligations that are owed.")

"Even if the parties intend to subsequently enter into a written contract, …, it does not necessarily follow that they have not made any contract until the writing is completed and signed." Dyer v. Bilaal, 983 A.2d 349, 359, n.9 (D.C. 2009) (quoting Jack Baker, Inc. v. Office Space Development Corp., 664 A.2d 1236, 1238 (D.C. 1995)).  Moreover, failing to agree upon the form and terms of a memorial does not invalidate an enforceable contract previously made between parties.  Id. (citing 1836 S Street Tenants Ass'n, Inc. v. Estate of B. Battle, 965 A.2d 832, 837, 839 (D.C. 2009) (if the contract contained all material terms, "the bargain is enforceable even if the parties never reach agreement on the non-material terms.")  Indeed, "provisions that are not necessary for the parties to understand how they are expected to perform the contract itself are not material and do not undermine the binding nature of the agreement." Id., at 358 (citing Tauber v. Quan, 938 A.2d 724, 730 (D.C. 2007)).[4]  See also Hackney v. Morelite Construction, 418 A.2d 1062, 1068-69 (D.C. 1980) ("'[T]he mere fact that a contract, definite in material respects, contains some terms which are subject to further negotiation . . . will not bar a decree for specific performance.'"

---

[4]  In Dyer, the Court expressly rejected any proposition that a party "could always avoid his legal obligations [to an otherwise enforceable contract] by later claiming he meant to include a term that he previously failed to mention."

(quoting Ammerman v. City Stores Co., 129 U.S. App. D.C. 325, 330, 129 U.S. App. D.C. 322, 394 F.2d 950, 955 (1968)).

Under District of Columbia law, an attorney with actual or even apparent authority can bind a party to a settlement agreement.  Makins v. District of Columbia, 861 A.2d 590, 593 (2004), rehearing *en banc*.

### B.  Virginia law

"It is a settled principle of Virginia law that '[t]he law favors compromise and settlement of disputed claims.'"  Snyder-Falkinham v. Stockburger, 249 Va. 376, 381 (1995). Oral agreements to settle are enforceable.  Flanary v. Milton, 263 Va. 20, 23 (2002) ("agreements made in contemplation of settling litigation can be enforced even though not reduced to writing.")  A settlement is binding even though the parties may contemplate that a formal, written Settlement Agreement memorializing the compromise will subsequently be executed. Snyder-Falkinham, at 385.  "If the parties are fully agreed upon the terms of the settlement and intend to be bound thereby, the mere fact that a later formal writing is contemplated will not vitiate the agreement."  Id. (inner quotations omitted).

 "[T]he essential elements of a valid contract must exist to support a binding compromise settlement; there must be a complete agreement including acceptance of an offer as well as valuable consideration."  Id.  "[I]t is well established that mutual promises in a contract constitute valuable consideration."  Price v. Taylor, 251 Va. 82, 85 (1996). "Ultimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested."  Snyder-Falkinham v. Stockburger, 249 Va. 376, 381 (1995).  "Once a competent party makes a settlement and acts affirmatively to enter into such settlement, her second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside."  Snyder-Falkinham v. Stockburger, 249 Va. 376, 385 (1995).

Under Virginia law, an attorney with actual and even apparent authority can bind a party to a settlement agreement.  Id.  "[I]f the authority of the attorney be apparent, then his client will be bound, unless the compromise possessed such elements of intrinsic unfairness as to provoke inquiry or imply fraud."  Singer Sewing Mach. Co. v. Ferrell, 144 Va. 395, 403-404 (1926).

> The general rule is that as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, in which event the principal is estopped to deny that the agent possessed the authority which he exercised. In such cases the apparent authority, so far as third persons are concerned, is the real authority; and when the third person has ascertained the apparent authority with which the principal has clothed the agent, he has a right to rely thereon.

Wright v. Shortridge, 194 Va. 346, 352 (1952).

After reviewing both D.C. and Virginia law on the enforceability of settlement agreements, there is no conflict with respect to the issues presented in this motion.  As there is no conflict in the laws of the two jurisdictions, the Court may apply the law of the District of Columbia without further conflicts of law analysis.  Samra v. Shaheen Bus. & Inv. Group, Inc., 355 F. Supp. 2d 483, 496 (2005).[5]

## II.    THE HOFGARDS ENTERED A VALID AND BINDING SETTLEMENT AGREEMENT WITH ARGUETA, SOUTHERN AND UNDERWRITERS.

"In most cases, a district court can enforce a settlement agreement summarily."  Id. at 493; Dyer v. Bilaal, 983 A.2d 349, 354-55 (D.C. 2009).  It is only when there is a genuine dispute about whether the parties have entered into a binding settlement that the district court must hold an evidentiary hearing.  Samra at 493.  "The party moving for enforcement

_____

[5] Even were the Court to engage in further analysis, the considerations taken under D.C. law would compel the application of D.C. law as the jurisdiction with the more substantial interest in the resolution of the issues given that both settlement agreements involve and impact property and claims in the District of Columbia and performance of each party's obligations to release claims and to fund the Headley settlement would occur in D.C. Samra, at 496, applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188.

of a settlement agreement bears the burden of showing, by clear and convincing evidence,

that the parties in fact formed a binding agreement in resolution of all the disputed issues in

the underlying litigation." Id.[6]

In this case, the parties met in mediation on April 15, 2015 before Judge Kay.  Insun

Hofgard personally attended that mediation with her counsel of record in this case, Howard

Stevens, allowing Mr. Stevens to engage in negotiations on her behalf.  On April 17th,

Headley communicated an amount of money she would accept to settle all of her claims

against the Hofgards.[7]  This initiated separate and distinct settlement negotiations between

and among the Hofgards, Argueta, Southern and Underwriters to resolve their separate

disputes as to coverage for the claims, which were not and are not at issue in the present

litigation.  On April 20th, Insun Hofgard personally e-mailed the attorneys for Argueta,

Southern and Underwriters, in which she communicated an offer relating to the settlement.

Importantly for this motion, Insun Hofgard's e-mail manifested to the other defense parties

that Howard Stevens had the Hofgards' authority to make offers which the other defense

parties could accept.  Makins v. District of Columbia, 861 A.2d 590, 594 (2004) rehearing *en

banc* ("The apparent authority of an agent arises when the principal places the agent in

---

[6] "'Clear and convincing evidence,' …, does not mean 'undisputed' or 'undisputable'
evidence.  Rather, at least in our jurisdiction [D.C.], the 'clear and convincing evidence'
standard of proof requires that the party bearing the burden of proof on a given issue
present evidence sufficient to allow the court to reach a firm conviction of the truth on the
evidence about which [it] is certain.  A 'firm conviction' or a 'reasonable certainty' are not the
same as an 'absolute certainty,' and so it follows that the presence of factual disputes
cannot necessarily or definitionally preclude a showing, by clear and convincing evidence,
of the existence of a valid settlement agreement.  For this reason, the existence or lack of
factual disputes concerning the validity of a settlement agreement cannot, *ex ante*, require
that the Court hold an evidentiary hearing to resolve a motion to enforce that agreement.
Rather, the Court must first determine whether, despite whatever factual disputes may exist,
the moving party has nevertheless carried the burden of proving the existence of a
settlement agreement by clear and convincing evidence.  Samra, at 494.

[7] Headley had not asserted any claims against Argueta.

such a position as to mislead third persons into believing that the agent is clothed with the authority which in fact he does not possess." )  On April 23rd, Howard Stevens did just that, making an offer by e-mail on behalf of the Hofgards spelling out material terms for the Side Agreement.  Argueta, Southern and Underwriters accepted the Hofgards' offer.  Thereafter on April 30, 2015, Howard Stevens represented to Judge Kay that the parties had reached settlement.

From this chain of events, all of the elements of a valid and enforceable contract have been met.  The Hofgards made a valid offer to compromise positions between them, Argueta and the insurers, which would allow acceptance of Headley's settlement demand and a settlement of this case.  See 1836 S St. Tenants Ass'n, Inc. v. Estate of Battle, 965 A.2d 832, 839 (D.C. 2009) ("[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.").  That offer was accepted by Argueta and the insurers and is binding on the Hofgards.  Id.  Because it involved a compromise of disputes between them, it was supported by valid consideration under District of Columbia law.  Dyer v. Bilaal, 983 A.2d 349, 357 (D.C. 2009) ("Mutuality exists when each party agrees to do something it otherwise is under no legal obligation to do, or to refrain from doing something it has a legal right to do.")  EastBanc v. Georgetown Park Assocs., 940 A.2d 996, 1003 (D.C. 2008) ("An exchange of promises provides sufficient consideration, evidencing mutual obligation.")  Finally, when Howard Stevens contacted Judge Kay to represent that the defendant parties would accept Headley's demand, he satisfied the final element of an enforceable contract by manifesting the specific intent by his clients to be bound to the Side Agreement.  New Econ. Capital, LLC v. New Markets Capital Grp., 881 A.2d 1087, 1094 (D.C. 2005).  This is so because the Side Agreement was the vehicle required to fund the settlement with Headley.

In conclusion, Howard Stevens had the Hofgards' consent to negotiate and make a binding offer to the other defense parties after Headley's settlement demand had been communicated.  The defense parties accepted that offer.  The Side Agreement is supported by Valid consideration and the Hofgards represented to Judge Kay their intent to be bound.  As such, the Hofgards' apparent misgivings about their agreement should not prevent enforcement of these settlements and dismissal with prejudice of this action.

WHEREFORE, the Third-Party Defendant, Edwin Aguirre Argueta, respectfully moves to enforce the settlements reached in this case, and for all other and further relief this Court deems appropriate.

Respectfully submitted,
    /s/ [Robert E. Worst]
Robert E. Worst, DC Bar No. 469849
Kalbaugh, Pfund & Messersmith, P.C.
3950 University Drive, Suite 204
Fairfax, Virginia 22030
(703) 691-3331
(703) 691-3332 (Fax)
Robert.Worst@kpmlaw.com
*Counsel for Edwin A. Aguirre*