## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JENNIFER HEADLEY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **INSUN S. HOFGARD,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| _____) | **Case No.: 1:14-cv-01436-EGS** |
| ) | |
| **INSUN S. HOFGARD,** *et al.,* ) | |
| ) | |
| **Third Party Plaintiffs** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **EA CONTRACTOR, INC.** *et al.* ) | |
| ) | |
| **Third Party Defendants.** ) | |
| _____) | |

## OPPOSITION TO THIRD-PARTY
## DEFENDANT'S MOTION TO ENFORCE SETTLEMENT

Defendants Insun S. Hofgard and Jefferson S. Hofgard (collectively, the "Hofgards" or "Defendants"), by and through counsel, hereby oppose the Motion filed by Third-Party Defendant Edwin Aguirre Argueta [Dkt. No. 38-1] to enforce an alleged side deal that is not an enforceable agreement under the local rules of this District, contains undefined material terms and was never agreed to by the parties, and state as follows:

## INTRODUCTION

By filing its motion to enforce the purported side deal, Argueta and its counsel have attempted to enforce an agreement that is nonbinding because it was not reduced to writing and not signed by counsel and the parties in accordance with LCvR 84.7(f).  In addition to the

absence of a written, fully executed agreement, there was no settlement because counsel for the parties never filed a stipulation of dismissal per LCvR 84.7(d)(2) and this Court's January 30, 2015 Minute Order. Despite never having reached an enforceable settlement agreement under this District's local rules, Argueta and his counsel have brazenly violated LCvR 84.9(a)(1) and 84.9(a)(3) which prohibit counsel and parties from disclosing any written or oral communications made in connection with or during any mediation session and using information acquired through meditation for any other purpose. In doing so, Argueta and his counsel bypassed the mandatory dispute resolution compliance procedure set forth under LCvR 84.10 .[1] Argueta and its counsel have done so as a part of a clearly inappropriate attempt to force an unenforceable side deal upon the Hofgards where it is obvious that no such agreement exists because there is no fully executed, written agreement and filed stipulation of dismissal as required by the local rules and Judge Sullivan.[2]  Argueta's Motion should be denied for this reason alone.

Even if the Court does not dismiss Argueta's Motion based on the local rules of this District, the motion should be dismissed because there is clearly no enforceable settlement

---

[1] The Motion filed by Argueta and his counsel fails to comply with local rule 84.10, which mandates that any complaints alleging a material violation of the local mediation rules or a judicial order referring a case to mediation must be presented to the Director of Dispute Resolutions. LCvR 84.10. The Director may then refer the case to the Compliance Judge who, in turn, may seek assistance from the Court if the Compliance Judge believes judicial intervention in necessary. *Id.* The rule makes clear that litigants are not permitted to bring compliance issues directly to the Judge assigned to the case, or even to the Compliance Judge. *Id.* Here, the judicial order referring the case to mediation ordered that if the case settled in whole or in part, the parties shall notify the court by filing a stipulation. January 30, 2015 Minute Order and Dkt. No. 29. For its motion to enforce, Argueta argues that "Defendants have balked at completing the settlement," preventing dismissal of the case. Memo., pp. 1, 11. To protect confidentiality and prevent bias, Argueta was required to seek assistance from the Director of Dispute Resolutions, not file a motion to enforce with this Court.

[2] For their part, the Hofgards must respond to Argueta's defiant and deficient motion. The Hofgards cannot adequately respond, and should not be expected to respond, to Argueta's unsubstantiated remarks without reference to information that otherwise would be confidential but for the violation of confidentiality by Argueta and his counsel. To the extent the Court requests copies of the underlying documents containing the information directly or indirectly disclosed by Argueta and his counsel, the Hofgards will provide such documents to the Court upon its request.

agreement under District of Columbia law.  In making its deficient filing, armed with nothing

more than an e-mail discussing terms for a potential side agreement (1) to which the Plaintiff in

this action was not a party; (2) that left essential material terms open and (3) which was never

accepted, Argueta requests (apparently on behalf of his insurer) that this Court enforce a

purported agreement to which the parties clearly never agreed.  The principal provision proposed

for the side agreement, a release in favor of Argueta and his insurer, Southern Insurance

Company of Virginia ("Southern") for an unrelated property involving a different owner and for

which no claim has yet been made, was never the subject of mutual assent and cannot be

enforced by the Court because the parties never agreed on the provision's nature and scope.

Even if the release provision had been defined, Argueta and Southern never accepted the offer

proposing the release.  To the contrary, Argueta and Southern rejected the proposal and

countered with broader release language that, for its part, was also never accepted.

      The boldness expressed by the present motion – a request that the Court enforce an

incomplete side deal that could not possibly be construed as an enforceable agreement – is highly

inappropriate.  For the reasons that follow, the Hofgards respectfully request that the Court deny

Argueta's Motion.

**ARGUMENT AND AUTHORITIES**

**I.     The Local Rules Governing The Mediation Process Mandate That A Settlement
        Agreement Has Not Been Reached Until It Is Reduced To A Signed Writing And A
        Stipulation Of Dismissal Is Filed – Neither Of Which  Happened With Regard To
        The Purported Side Deal.**

      Putting aside for the time being the claim by Argueta that there was an enforceable oral

agreement, Argueta's Motion utterly ignores the local rules governing the mediation process to

which Argueta was bound.  Under the section entitled "**AGREEMENTS TO BE REDUCED**

**TO WRITING,**" the local rules of this Court state as follows: "Agreements reached during

mediation shall not bind the parties unless they are reduced to writing and signed by counsel and the parties." LCvR 84.7(f). Upon reaching a fully executed written agreement, counsel is required to "notify the Court [of the settlement] by filing a stipulation of dismissal or other appropriate document." LCvR 84.7(d)(2).

The Court reiterated this rule in its January 30, 2015 Minute Order in which the Court stated: "If this case settles in whole or in part, the parties shall notify the Court by filing a stipulation." The requirement that any settlement, whether it be the entire case or a portion of the case, be memorialized by a stipulation of dismissal was repeated in the Court's February 2, 2015 case referral to the Magistrate [Dkt. No. 29].

Despite not having a written, fully executed settlement agreement and not having filed a stipulation, Argueta disclosed information pertaining to the parties' negotiations in violation of LCvR 84.9(a)(1) and 84.9(a)(3). LCvR 84.9(a)(1) "prohibits . . . all counsel and parties and any other persons . . . from disclosing any written or oral communications made in connection with or during any mediation session." LCvR 84.9(3) dictates that "[i]nformation acquired through mediation shall not be used for any purpose . . . in any pending or future proceeding in this or any other court of forum." Argueta's simple disclosure of the alleged facts and circumstances underlying the parties' confidential settlement negotiations constitutes a breach of these provisions.

Furthermore, as noted above, Argueta and his counsel side-stepped the dispute resolution compliance procedure in order to place its motion to enforce before the court. *See* fn.1, *supra*. While the Court ordered Argueta to brief the issue concerning the purported existence of an enforceable side deal, *see* June 2, 2015 Minute Order, by this time, Argueta had already made its improper disclosures to the Court through its May 29, 2015 Status Report [Dkt. No. 35] in which

Argueta disclosed its view of the nature of the settlement negotiations and indicated its intent to file its motion to enforce before this Court, rather than the mediation compliance judge.

Argueta has represented to the Court that in connection with their court-referred mediation, the parties entered into a supposed side deal that the Court is obligated to enforce.  In making this representation to the Court, Argueta has not presented the Court with a written, fully executed agreement signed by counsel of record and the individual parties.  Indeed, no such agreement exists.  Quite the opposite – Argueta points the Court to a confidential e-mail message from counsel for the Hofgards, along with confidential settlement negotiations, made in connection with the underlying mediation.  Not only have Argueta and his counsel violated the this District's confidentially restrictions for their own benefit, by filing the motion to enforce Argueta and his counsel have represented that there is a good faith basis for enforcement of the supposed side deal.  Of course, there is not.

In the absence of a fully executed written agreement and stipulated dismissal filed with this Court, there could not have been an enforceable side deal settlement.  Argueta and his counsel presumably have been fully apprised of this Court's local rules.  The audacious action taken by Argueta and his counsel seeking enforce a purported settlement in the absence of a true settlement is highly inappropriate and is grounds for denial of Argueta's Motion in and of itself.  However, even if the Court does not deny Argueta's motion based on the foregoing, Argueta's Motion should be denied for the reasons that follow because no enforceable settlement agreement exists under the laws of this District.

## II.    Enforceability Of Settlement Agreements Under District Of Columbia Law.

In this District, "the issue of 'whether parties have reached a settlement is a question of contract law.'"  *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 49 (D.D.C. 2009) (quoting

*United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001)).  A complete, enforceable

settlement agreement may exist only where there is "'(1) an agreement as to all the material

terms; and (2) an intention of the parties to be bound.'"  *Id.* (quoting *Hood v. District of*

*Columbia*, 211 F. Supp. 2d 176, 179 (D.D.C. 2002)).  An agreement "must be sufficiently

definite as to its material terms . . . [such] that the promises and performances as to be rendered

by each party are reasonably certain."  *James v. Miche Bag Corp.*, 967 F. Supp. 2d 365, 368

(D.D.C. 2013) (citation omitted) (internal quotation marks omitted).  This District has recognized

that a party's release of liability is a material term under a settlement agreement.  *Blackstone v.*

*Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014) (citing *Wise v. Riley*, 106 F. Supp. 2d 35, 39 (D.D.C.

2000)).

Consistent with these essential requirements, there must be a "honest and fair 'meeting of

the minds' as to all issues in a contract."  *Hood*, 211 F. Supp. 2d at 179 (refusing to "enforce an

agreement when the parties never actually reached one," despite finding that parties had agreed

on a monetary settlement amount) (quoting *Simon v. Circle Assocs., Inc.*, 753 A.2d 1006, 1012

(D.C. 2000)).  In construing a settlement agreement, "'the Court must look at the parties'

objective manifestations of intent.'"  *Carroll*, 636 F. Supp. 2d at 49 (quoting *Hood*, 211 F. Supp.

2d at 180).

"'The determination of whether an enforceable contract exists, when based on the

contract documents, is a question of law.'"  *Id.* (quoting *Rosenthal v. Nat'l Produce Co.*, 573

A.2d 365, 369 n.9 (D.C. 1990)).  "The party asserting the existence of a settlement agreement

bears the burden of proof and must show that an enforceable contract exists as to all elements

including agreement to all material terms, and the intention of the parties to be bound."  *Id.*

(citing *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 152 (D.D.C. 2002) (If "[t]he plaintiff fails to

meet [its] burden . . . there is no genuine issue of any material fact.") (citation omitted)); *see also Dyer v. Bilaal*, 983 A.2d 349, 356 (D.C. 2009) ("Generally, parties need to express their intentions so that a court can understand them, determine whether a breach has occurred, and identify the obligations it should enforce."); *Blackstone*, 63 F. Supp. at 77 ("[W]ith respect to an oral contract, the material terms of the agreement must be 'sufficiently definite' such that the parties are clear about the performance that is due and the obligations that are owed.") (citing *Rosenthal*, 573 A.2d at 370).

For purposes of determining whether the parties intended to be bound, the Court is required to examine the objective manifestations of intent of the parties. *Carroll*, 636 F. Supp. 2d at 49 (citing *Akassy v. William Penn Apartments Ltd*., 891 A.2d 291, 299 (D.C. 2006) ("The reasonable person standard is applied both to the circumstances surrounding the contract and the course of conduct of the parties under the contract.")).  A court must only hold an evidentiary hearing "'[w]hen there is a *genuine dispute* about whether the parties have entered into a binding settlement.'"  *Id*. (emphasis added) (quoting *Mahoney*, 247 F.3d at 285).  On the other hand, "[a] district court cannot summarily enforce a settlement 'until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement.'"  *Hood*, 211 F. Supp. at 180.

**III.    There Can Be No Genuine Dispute That The Alleged Side Deal Lacks Definiteness, Mutual Agreement And Acceptance As To The Material Release Provision Upon Which The Entire Side Deal Was Premised And Is Not An Enforceable Agreement.**

Argueta's request that this Court enforce the Partially Negotiated Side Deal is premised on the e-mail dated April 23, 2015 from counsel for the Hofgards to counsel for Argueta that Argueta and his counsel improperly disclosed.  Argueta asserts that the e-mail was an offer "spelling out material terms" that Argueta and Southern purportedly accepted.  Memo. p. 10.

One of the material terms discussed in the April 23rd e-mail related to the scope of the release of

liability that Argueta and Southern sought as a side deal separate and apart from the settlement

agreement with Plaintiff (which is not the subject of Argueta's Motion).  The email suggested a

release in favor of Argueta and Southern that would not apply to unknown claims or future

claims.  It was further noted that with respect to the release, a detailed list of known defects

could be negotiated.  Argueta and Southern have not, and cannot, provide the Court with a single

document exchanged by the parties at the time of negotiations – or subsequently thereto – that

identified or defined the known claims as of April 23rd that were the subject of the purported

release.

    The April 23rd email from the Hofgards' counsel also cautioned counsel for Argueta that

the parties were operating under a changing landscape.  The landscape in fact changed

dramatically when the District of Columbia filed suit against the Defendants on May 7, 2015

relating to several D.C. properties, including the property herein that was the subject of the April

23rd email.  Not surprisingly, the contemplated potential for subsequent liability was the reason

why the Hofgards were only willing to give Argueta and Southern a narrow, present release for

specifically identified and known claims and defects.  Conversely, it was also the reason why

Argueta and Southern countered with a broad and forward looking release that included a

universal release of all possible claims.  This counterproposal is contained in a May 10, 2015

version of the partially negotiated side agreement sent by counsel for Argueta to counsel for the

Hofgards.

    Given the changed landscape, which was a condition expressed in the April 23rd e-mail,

the Hofgards absolutely could not and would not agree to a side deal that could potentially

subject them to enormous liability while exculpating Argueta and his insurer from any further

substantial liability for which they would otherwise be responsible.  The April 23rd email outlined the limited scope of a proposed release that the Hofgards were willing to negotiate based on the changing legal landscape.  As noted previously, the parties did not define the items that would comprise the proposed release, and the limitation on the scope of the release was ignored in the draft side agreement that was prepared by Argueta's counsel.  Argueta and Southern were fully aware that any negotiated release would be limited and would take into consideration the changing landscape.  Furthermore, Argueta and his insurer were fully aware of the potential financial implications of the lawsuit filed by the District of Columbia.  Imposing the broad, unlimited release that Argueta and his insurer seek in the face of the changed landscape of potentially liability is tantamount to forcing the Hofgards into a deal that everyone involved knew the Hofgards simply could not afford and would inappropriately release Argueta and Southern from any further liability for the properties outlined in the D.C. lawsuit.  This is a reality that the Hofgards could not ignore—Argueta and Southern are asking this court to ignore—and the Court should not ignore under the Court's own Rules and case law in this jurisdiction.  To be sure, this Court should not be forced, and should not force the Defendants, into an alleged  settlement agreement with potential horrific financial and legal consequences.

Additionally, the April 23rd caveat provided to Argueta and Southern regarding the underlying state of affairs evidences the materiality of the release provision and is consistent with the Hofgards' proposal to provide only a limited release with regard to claims and defects that still needed to be identified and accepted.[3]  In the absence of sufficiently express terms defining the nature and scope of the potential release and the limitations thereto, there was no

---

[3] *Cf. Blackstone*, 63 F. Supp. 3d at 77 ("Terms may be deemed immaterial when the parties do not discuss them during negotiations, but rather only bring them up after-the-fact.").

meeting of the minds on this material term and thus no enforceable agreement.  *See Malone v. Saxony Coop. Apartments, Inc.*, 763 A.2d 725, 729 (D.C. 2000) ("As long as the parties know that there is an essential term not yet agreed on, there is no contract."); *see also Blackstone*, 63 F. Supp. at 78 ("There is no intent to be bound 'if either party knows or has reason to know that the other party regards the agreement as incomplete' or that one party only intends to be bound to a later written agreement.") (citations omitted).

Even if the Court were inclined to accept Argueta's contention that he accepted the proposal in the April 23rd e-mail, the release would necessarily be limited to present, known claims and defects as of that date.  And, since none of the claims purportedly being released were described or identified, the Court would be in the untenable positon of trying to discern and describe *the* material term of the alleged agreement – i.e., what was supposedly released. Enforcement of the claimed side agreement would be impossible because the Court would not be in a reasonable position to determine what claims were released and what claims were not. Argueta's empty request that the Court compel performance of purely speculative terms is as remarkable as it is unworkable.

In any event, even if the material release language was sufficiently definite (which it clearly is not) Argueta and Southern never accepted the April 23rd proposal in any event. Argueta claims that "[a]fter consideration [of the April 23rd e-mail], the insurers and Argueta accepted that offer, as evidenced by numerous e-mailed correspondences and participation by all of the defense parties in drafting a Settlement Agreement between themselves."  Memo. p. 3. But negotiations alone do not determine whether a party accepts an offer.  An acceptance of an offer requires a "clear and unequivocal" "manifestation of assent to the terms thereof made by

the offeree . . . .'" *REO Acquisition Group v. Fed. Nat'l Mort. Assoc.*, No. 13-cv-1953 (KBJ),

2015 WL 738148, at *6 (D.D.C. Feb. 20, 2015) (citation omitted).

In the present case, any acceptance on behalf of Argueta and Southern must have been a

"clear and unequivocal" agreement to the terms proposed in the April 23 email.   In particular,

Argueta and Southern cannot be deemed to have accepted the April 23rd offer if Argueta and

Southern did not sufficiently communicate their assent to the limited (and undefined) release

proposed.  *See REO Acquisition Group*, 2015 WL 738148, at *6.  In no uncertain terms, the

April 23rd email offered only a limited release to Argueta and Southern for present and known

claims and defects.  The offer dictated that the release would not apply to unknown claims and

future claims.

But Argueta and Southern did not unequivocally assent to these terms; indeed, they

rejected these terms and countered with a proposal that included an unlimited release covering

present and *future* claims, both known and *unknown*.  This counteroffer was never accepted by

the Defendants.  Thus, there was no agreement on the key term of the alleged agreement; the

breadth of the release.  Argueta's conclusory assertion that the parties' subsequent negotiations

and discussions concerning disputed and undefined material terms evidences his acceptance of

an offer is contrary to fundamental contract law in the District of Columbia and certainly should

not serve as a basis for this Court to foist an agreement on the parties that lacks an honest and

fair meeting of the minds as to a crucial, material term.

In addition to the material release provision, other material terms of the alleged side deal

also remained in flux and unassented to following the April 23rd e-mail.  These additional

provisions involved additional terms proposed by Southern concerning a reservation of

subrogation rights, additional terms proposed by Southern concerning non-disparagement, and

removal of provision requiring the parties to withdraw all current judicial and regulatory

complaints, and additional terms proposed by Southern concerning indemnification rights.  The

myriad of changes further demonstrates that there was no meeting of the minds and that the

parties – at best – were still in negotiations when the landscape changed and the negotiations

came to an end without an agreement.  A court should not enforce an agreement where the

parties never actually reached an agreement.  *Hood*, 211 F. Supp. 2d at 179; *see also Simon v.*

*Circle Assocs., Inc.*, 753 A.2d 1006, 1012.

**CONCLUSION**

WHEREFORE, based on the forgoing, Defendant Edwin Aguirre Argueta's Motion to

Enforce Settlement [Dkt. No. 38-1] fails to demonstrate the existence of an enforceable

settlement.  Accordingly, the Hofgards respectfully request that the Court deny the Motion and

decline to enforce the alleged side agreement.

Dated: June 29, 2015                              Respectfully submitted,


    /s/ A. Scott Bolden
A. Scott Bolden (D.C. Bar No. 428758)
Michael B. Roberts (D.C. Bar No. 976409)
REED SMITH LLP
1304 K Street, N.W.
Suite 1000 – East Tower
Washington, DC 20005
Phone: (202) 414-9200
Facsimile: (202) 414-9299
abolden@reedsmith.com
mroberts@reedsmith.com

Michael Dingman (admitted pro hac vice)
Nicholas V. Albu (admitted pro hac vice)
REED SMITH LLP
3110 Fairview Park Drive, Suite 1400
Falls Church, VA 22042-4503
Phone: (703) 641-4253

Facsimile: (703) 641-4340
mdingman@reedsmith.com
nalbu@reedsmith.com

*Counsel for Defendants Insun S. Hofgard and
Jefferson S. Hofgard*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 29, 2015 a true and correct copy of the foregoing Opposition

to Third-Party Defendant's Motion to Enforce Partially Negotiated Side Deal was served via

CM/ECF upon all counsel of record.


<u>   /s/ A. Scott Bolden         </u>
A. Scott Bolden (D.C. Bar No. 428758)
REED SMITH LLP
1304 K Street, N.W.
Suite 1000 – East Tower
Washington, DC 20005
Phone: (202) 414-9200
Facsimile: (202) 414-9299
abolden@reedsmith.com