IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER HEADLEY ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| INSUN S. HOFGARD, et al. ) | Case No. 1:14-cv-01436-EGS |
| ) | |
| Defendants. ) | |
| INSUN and JEFFERSON HOFGARD ) | |
| ) | |
| Third-Party Plaintiffs ) | |
| v. ) | |
| ) | |
| EDWIN AGUIRRE ARGUETA, et al. ) | |
| 44160 Tippecanoe Terrace ) | |
| Ashburn, Virginia 20147 ) | |
| ) | |
| Third-Party Defendants. ) | |

**REPLY BY THIRD-PARTY DEFENDANT
FOR MOTION TO ENFORCE SETTLEMENT**

The Third-Party Defendant EDWIN AGUIRRE ARGUETA respectfully replies to defendants' Opposition to his Motion to Enforce Settlement as follows:

The defendants Insun S. Hofgard and Jefferson S. Hofgard (collectively the "Hofgards") erroneously cite to this Court's local rules on the Court's Mediation Program (and additionally misinterpret those rules) in opposing Third-Party Defendant Edwin Aguirre Argueta's (hereinafter "Argueta") Motion to Enforce the settlement reached in this matter as the negotiations and side agreement reached by and between the Hofgards, Argueta, Southern Insurance Company of Virginia ("Southern") and Certain Underwriters at Lloyds, London ("Underwriters") did not occur during the mediation with Judge Kay, nor did Judge Kay play any part in assisting these parties with those negotiations or side agreement. Because the local rules found in LCvR 84 through 84.10 do not apply to these negotiations

or side agreement, none of the argued proscriptions apply.  With respect to personally negotiated agreements such as the side agreement at issue here, the numerous cases cited by both Argueta and the Hofgards demonstrate without exception that the Court can entertain this motion and can enforce this settlement.  Further, the cases cited by the Hofgards actually support the motion to enforce the settlement as the offer made by the Hofgards contained all the material terms for a valid contract and the writings and conduct of the parties evidence a meeting of the minds on these material terms and an intent to be bound by the side agreement.  The non-material issues raised by the Hofgards do not invalidate the Agreement already reached.  Therefore the side agreement should be enforced, which will result in the settlement of the present action.

## DISCUSSION

I.  **The Court's Mediation Rules LCvR 84 through 84.10 do not apply to the Side Agreement proposed and reached outside of formally conducted mediation and do not prevent enforcement of the Agreements reached in this matter.**

LCvR 84(b) provides:  "These rules apply _only_ to mediation proceedings that are formally conducted through the United States District Court's Mediation Program." [Emphasis added].  Although the parties met in mediation on April 15, 2015, they were unsuccessful in settling the case at that mediation.  It was only following that mediation, in private negotiations between the Hofgards, Argueta, Southern, and Underwriters, that these parties negotiated and entered a side settlement agreement.  Because issues resolved in the side agreement were separate and distinct from the claims advanced by Jennifer Headley against the Hofgards, and addressed separate and distinct claims and issues from those asserted by the Hofgards against Argueta in the present action, and because the side agreement was not even proposed until days after the parties had left mediation, the side agreement was never "formally conducted through the United States District Court's

Mediation Program" and therefore does not fall under the provisions of LCvR 84 through 84.10.

Despite not falling under the Mediation rules, Argueta nevertheless has not revealed in any of his filings with this Court any settlement communications between any of the parties which would have been prohibited by those rules. Indeed, Argueta expressly advised in his motion that he was withholding all evidence related to the communications and negotiations between the parties to preserve its confidential nature. (MOT. p.3, n.2) Therefore, the Hofgards' assertion that Argueta violated the rules is wrong. Moreover, it is to be noted that, despite asserting Argueta violated these rules by disclosing "the alleged facts and circumstances underlying the parties' confidential settlement negotiations" (OPP. p.4), the Hofgards themselves reveal specific details of the terms of the side agreement in arguing against its enforceability. (Opp. pp.3 and 8).

Second, although the Hofgards argue that Argueta violated the Mediation rules by side-stepping the dispute resolution compliance procedure of LCvR 84.10 (MOT. p.2 n.1), Argueta does not complain that a material violation of the mediation local rules has occurred. On the contrary, it is the Hofgards who make such a complaint. However, they have not made their complaint to the Director of Dispute Resolution as set forth in Rule 84.10, but rather submit their arguments to this Court, thereby waiving their argument that LCvR 84.10 provides the procedure to follow.

Finally, the Hofgards misinterpret the Court's Minute Order of January 30, 2015 as conditioning any settlement on the filing of a stipulation of dismissal. The Court's Minute Order, however, does not make a stipulation of dismissal a condition precedent to an enforceable settlement agreement, but rather orders a stipulation of dismissal to "notify the Court" of any settlement, presumably so that the Court may determine whether it can

remove the case from its active docket or has further issues remaining for continued litigation.

II.     **The Cases cited by the Parties Demonstrate Without Exception the Court's Authority to Determine and Enforce the Parties' Settlement.**

Moving to the real argument on this motion, the Hofgards cite to case law which demonstrates that this Court has the authority to determine whether the parties have reached an agreement and whether that agreement is enforceable.  See, Carroll v. Fremont Inv. & Loan, 636 F. Supp. 2d 41, 50 (D.D.C. 2009) (determining the parties had not reached a settlement because the evidence of the parties' conduct did not prove an intent to be bound.); Hood v. D.C., 211 F. Supp. 2d 176, 180 (2002) (determining the parties never reached a settlement because they never reached a meeting of the minds);  Dyer v. Bilaal, 983 A.2d 349 (D.C. 2009) (determining e-mailed proposal became a binding settlement agreement once accepted, despite later negotiation of non-material terms); Blackstone v. Brink, 2014 U.S. Dist. LEXIS 110412, at *25 (finding parties had reached a valid and enforceable settlement agreement).  Indeed, the method of reaching a settlement in Dyer v. Bilaal is analogous to the method involved in this matter: *an e-mailed proposal that was accepted by telephone and subsequent conduct.*  Dyer, 983 A.2d at 355-56.

III.    **The E-Mailed Offer contained all the required material terms with sufficient definiteness to allow enforcement of the Side Agreement.**

The analysis by the court in Dyer is further instructive in its citations to other District of Columbia cases enforcing settlements despite the failure to specify every particular detail of the terms. Id. at 356-57 ("The terms in the May 28, 2007 e-mail are definite enough to be enforceable because each party could be *reasonably* certain how it was to perform.") (Emphasis added)  The court explained:

4

> "The enforceability of the agreement comes from the definitive character of the *obligation* to perform, not a precise description of the ways in which the obligation might be fulfilled." Although the e-mail did not assign an exact cost to Mr. Dyer's obligation to pay off the King mortgage "in full," it did not have to do so. "[A] price term is not necessarily indefinite because the agreement . . . leaves fixing the amount for the future."

Id. at 357 (quoting EastBanc v. Georgetown Park Assocs., 940 A.2d 996, 1003 (D.C. 2008) which in turn quoted Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 548 N.Y.S.2d 920, 548 N.E.2d 203, 206 (1989)).

Here, the Hofgards' April 23rd e-mail sets forth all of the material terms of a contract, including the subject matter of the agreement, the price, the payment terms, and a description of what is being released to satisfy the requirement of mutuality. See Dyer at 356 (identifying material terms required to form a contract). Although the Hofgards argue that the specific details of what was being released were not set forth in the e-mail, those specific details were not required. The offer to list defects was merely a courtesy to restate what the parties already knew from the discussions underlying the offer, which were sufficient for all parties to know what was encompassed by the offer.[1] See Id. at 356-57; EastBanc, 940 A.2d at 1003. (because all "agreements have some degree of indefiniteness and some degree of uncertainty, the terms need not be fixed with complete and perfect certainty for a contract to be enforceable.") Id. (inner quotations omitted).

In fact, not only were the details already known by the Hofgards, which is evidenced by the statements made in the April 23rd e-mail, but the threatened claims by the District of Columbia were also well known by all of the parties from before the mediation and through the time when the Hofgards' attorney advised Judge Kay that the parties had reached a settlement. In their Opposition, the Hofgards themselves concede that the threatened claims by the District of Columbia were already known by the parties when they repeatedly

---

[1] Evidence about the details can be presented to the Court.

5

argue that the Offer E-Mail referenced a "changing landscape." If the parties had not known that the DC lawsuit was being readied for filing, how would they have known the landscape was changing? Moreover, the Hofgards mischaracterize how that specific term was used in the April 23rd e-mail, erroneously suggesting it provided a potential barrier to settlement, rather than what the language actually stated: the e-mail shows that the "changing landscape" did not refer to a limitation on the offered release, but rather referred to an aspect of the price and payment terms.

**IV. The Conduct of the Parties Evidences their Intent to Be Bound by the Side Agreement.**

As well, the conduct and writings by the parties evidence that they all intended to be bound by the side agreement. Not only did the Hofgards' attorney tell Judge Kay on April 30th that the parties had reached a settlement, which could not have been represented had they not reached the side agreement, but the Hofgards' attorney also confirmed that the case was settled to Jennifer Headley's attorney by e-mail on May 4, 2015, and again by sending Ms. Headley's attorney a draft Settlement Agreement on May 6, 2015. Representing that, and proceeding as if, the case was settled evidences an intent to be bound by the side agreement. Dyer, at 357 (objective conduct of the parties manifested a mutual intent to be bound). Despite the Hofgards' arguments to the contrary, the circulated drafts of written settlement agreements were not counter-offers, but were themselves manifestations of an already reached settlement agreement. The nature of the communications and revisions makes it clear that the revising of language was to make the written document conform to the agreement already reached. That the parties had not finalized the revisions at the time the Hofgards reneged is not evidence that they had not reached an agreement and does not prevent this Court from enforcing that agreement.

**V.      The Non-Material Terms being worked through in drafting a written settlement agreement do not prevent enforcement of the Settlement Agreement under District of Columbia Law.**

"Even if the parties intend to subsequently enter into a written contract, as was indisputably the case here, it does not necessarily follow that they have not made any contract until the writing is completed and signed." Dyer, at 359, n.9 (quoting Jack Baker, Inc. v. Office Space Development Corp., 664 A.2d 1236, 1238 (D.C. 1995)).

> Moreover, failing to agree upon the form and terms of a memorial does not invalidate an enforceable contract previously made between parties. (citing 1836 S Street Tenants Ass'n, Inc. v. Estate of B. Battle, 965 A.2d 832, 837, 839 (D.C. 2009) (if the contract contained all material terms, "the bargain is enforceable even if the parties never reach agreement on the non-material terms."); Hackney v. Morelite Construction, 418 A.2d 1062, 1068-69 (D.C. 1980) ("'[T]he mere fact that a contract, definite in material respects, contains some terms which are subject to further negotiation . . . will not bar a decree for specific performance.'" (quoting Ammerman v. City Stores Co., 129 U.S. App. D.C. 325, 330, 129 U.S. App. D.C. 322, 394 F.2d 950, 955 (1968))).

Id.

The Hofgards raise a number of non-material terms included in the written drafts to argue there were "further negotiations," suggesting no agreement had yet been reached. They refer to the proposed reservation of subrogation rights by Southern, non-disparagement provisions, indemnification rights, etc.  However, the work on these provisions, again, was merely to bring the written document being drafted into conformance with the agreement already reached by the parties as to standard terms and understandings already present.  In fact, it is important to recognize that the Hofgards do not base their opposition on *disagreement* with any of these provisions, but rather raise them merely for arguments' sake.  To any extent the Hofgards argue these provisions indicate no meeting of the minds, DC law is unavailing to them.  Dyer, at 358 ("provisions that are not necessary for the parties to understand how they are expected to perform the contract itself are not material and do not undermine the binding nature of the agreement.)  (citing Tauber v.

7

Quan, 938 A.2d 724, 730 (D.C. 2007)). Indeed, reserved rights of subrogation do not impact how the parties are to perform their obligations under the side agreement.  And evidence will show that the parties had all been discussing non-disparagement and indemnification issues throughout their post-mediation negotiations.  Indeed, these provisions were included in the very first "form" agreement utilized by the parties to adapt the writing to their agreement.  "The mere fact that a contract, definite in material respects, contains some terms which are subject to further negotiation . . . will not bar a decree for specific performance.'" Hackney v. Morelite Construction, 418 A.2d 1062, 1068-69 (D.C. 1980) (quoting Ammerman v. City Stores Co., 129 U.S. App. D.C. 325, 330, 129 U.S. App. D.C. 322, 394 F.2d 950, 955 (1968))).  As such, these provisions are not impediments to the settlement because the Hofgards do not actually disagree with them.  They are routinely included in or at least considered for inclusion in settlement agreements.  They were a part of the discussions from the beginning of negotiations.  And they do not materially impact how the parties are to perform their respective obligations under the side agreement.  To any extent they are the subject of disagreement, DC law would find them non-material terms which do not bar enforcement of the agreement actually reached by the parties.

In conclusion, because the written documentation provides all of the required material terms, with sufficient definiteness that each party can be "reasonably certain" about what it has promised to do and how it is to perform, and the parties by their conduct have evidenced an intent to be bound to the side agreement, the Court should not allow the Hofgards to renege on their agreement merely because they "may now regret having settled." Dyer, at 360.  The parties reached a valid and binding Settlement Agreement and the Court should enforce it.

WHEREFORE, the Third-Party Defendant, Edwin Aguirre Argueta, respectfully moves to enforce the settlements reached in this case, and for all other and further relief this Court deems appropriate.

Respectfully submitted,
    /s/ [Robert E. Worst]
Robert E. Worst, DC Bar No. 469849
Kalbaugh, Pfund & Messersmith, P.C.
3950 University Drive, Suite 204
Fairfax, Virginia 22030
(703) 691-3331  *  (703) 691-3332 (Fax)
Robert.Worst@kpmlaw.com
*Counsel for Edwin A. Aguirre*